# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                                        )
DIPING Y. ANDERSON,                     )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )        Civil Action
                                        )        No. 14-13380-PBS
MEGAN J. BRENNAN, Postmaster            )
General,                                )
                                        )
                    Defendant.          )
_____ )
```

## MEMORANDUM AND ORDER

June 1, 2017

Saris, C.J.

Following a seven-day bench trial, the Court concluded that plaintiff Diping Anderson's termination from her employment as a Postal Police Officer ("PPO") was retaliatory in violation of Title VII. The Court issued its findings of fact and conclusions of law on March 16, 2017. Anderson v. Brennan, No. CV 14-13380-PBS, 2017 WL 1032502 (D. Mass. Mar. 16, 2017). The Court assumes familiarity with that decision. Judgment was entered on March 17, 2017. The parties subsequently filed four motions seeking reconsideration of both liability and remedies.

The Court's finding of liability stands, but the Court finds that some reconsideration of the remedies is appropriate. The Plaintiff's Motion to Alter Judgment (Docket No. 125) is

**ALLOWED** in part and **DENIED** in part. The Plaintiff's Motion for Leave to File Untimely Motion for Attorney's Fees (Docket No. 126) is **ALLOWED**. The Plaintiff's Motion for Assessment of Pre-Judgment Interest (Docket No. 127) is **ALLOWED** in part and **DENIED** in part. The Defendant's Motion for Reconsideration (Docket No. 128) is **ALLOWED** in part and **DENIED** in part.

**BACKGROUND**

In September 2013, Anderson was removed from service as a PPO for failure to perform her duties while assigned to guard the Brockton postal facility in the aftermath of a building fire. Anderson's termination notice stated that, in addition to her misconduct at Brockton, three prior disciplinary incidents on Anderson's record "ha[d] been considered in arriving at this decision": (1) her June 24, 2011 seven-day suspension; (2) her August 29, 2012 Letter of Warning; and (3) her September 26, 2012 fourteen-day suspension.

Anderson brought this suit against the Postal Service claiming that her removal was unlawfully discriminatory and retaliatory, in violation of Title VII. At trial, Anderson presented evidence not only on the circumstances of her removal but also on the circumstances underlying the three prior disciplinary incidents cited in her notice of removal. At the close of evidence, the Court directed the parties to address in their closing arguments what impact there should be on the

verdict if the Court found some of the prior disciplinary incidents to be discriminatory or retaliatory.

In closing arguments, the parties clarified that the only remedies sought in this case were those stemming from the removal. The parties were in agreement that Anderson could not timely seek remedies for any of the prior disciplinary incidents. However, Anderson argued that the circumstances underlying the prior disciplinary incidents were relevant to assessing whether the removal decision was discriminatory or retaliatory. The Court signaled to the Postal Service that the Court would only consider remedies based on the removal decision but that the Court was "very much going to be considering the progression [of discipline] to see whether the notice of a removal was appropriate." The Court asked the Postal Service to answer, in its supplemental proposed findings of fact and conclusions of law, the following question: "If I find that one of them [the prior disciplinary actions], or more, were retaliatory, and if I find they were a substantial factor in the decision for removal, what do I do?"

The Postal Service minimally addressed the question in its briefing: "That decision [by the administrative judge upholding the seven-day suspension] became final when Plaintiff neither appealed that decision nor brought an action in federal court within the time permitted to do so. Any consideration of it now

is precluded as a matter of law." Docket No. 121 at 7. For that proposition, the Postal Service cited <u>Velazquez-Ortiz v. Vilsack</u>, 657 F.3d 64, 71 (1st Cir. 2011), <u>Martinez v. Potter</u>, 347 F.3d 1208, 1211 (10th Cir. 2003), and <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002).

On March 16, 2017, the Court issued its findings of fact and conclusions of law ("bench trial order"). The Court concluded that Anderson's removal was retaliatory. The Court awarded back pay and emotional distress damages. <u>Anderson</u>, 2017 WL 1032502, at *16-19. The Court also ordered reinstatement of Anderson not as a PPO, but in the position she held in the Postal Service prior to becoming a PPO: a full-time window clerk. <u>Id.</u> at *17.

## DISCUSSION

### I.   <u>Legal Standard for Altering or Amending Judgment</u>

Federal Rule of Procedure 59(e) provides for the filing of a motion to alter or amend a judgment no later than twenty-eight days after the entry of judgment. "Rule 59(e) itself does not state the grounds on which relief under the rule may be granted, and the district courts have considerable discretion in deciding whether to grant or deny a motion to alter or amend under Rule 59(e)." <u>Venegas-Hernandez v. Sonolux Records</u>, 370 F.3d 183, 190 (1st Cir. 2004). The case law has articulated some circumstances in which Rule 59(e) relief is appropriate. <u>Id.</u> Among those

circumstances is when "the movant shows a manifest error of law." Kansky v. Coca-Cola Bottling Co. of New Eng., 492 F.3d 54, 60 (1st Cir. 2007).

## II.  Consideration of Prior Disciplinary Incidents

The Postal Service argues that the Court made an error of law by considering the retaliatory nature of prior disciplinary incidents in finding liability for retaliatory removal. In its bench trial order, the Court recognized that Anderson's three prior disciplinary incidents were not directly actionable because they were time-barred and unexhausted. Anderson could not revive and seek a remedy for past unlawful prior disciplinary incidents by bundling them with the more recent removal, for which her Title VII claim was timely. See Nat'l R.R. Passenger Corp., 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); see also Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 48 (1st Cir. 2015).

However, the Court held that because of the Postal Service's explicit reliance on prior discipline in its progressive discipline system, consideration of the prior disciplinary incidents was appropriate even if Anderson was only seeking a remedy for unlawful removal. To recover for retaliatory removal, Anderson must show that she would not have

been removed <u>but for</u> engagement in protected activity. One part of the Court's reasoning was that Anderson could meet that causation requirement by showing that she would not have been removed but for her prior disciplinary incidents, which themselves would not have been imposed but for engagement in protected activity.

The Postal Service now cites two cases to attack the Court's reasoning. The main case is <u>United Air Lines, Inc. v. Evans</u>, 431 U.S. 553 (1977). The plaintiff in that case was Evans, a female flight attendant who had been forced to resign from her position in 1968 because of a policy by United that prohibited female flight attendants from being married. Evans did not file a timely challenge to the policy, although the policy was later found to violate Title VII in a case to which Evans was not a party. Evans was rehired by United in 1972. In <u>Evans</u>, Evans recognized that it was too late to obtain relief for unlawfully being forced to resign in 1968 but she claimed that United's refusal to credit her with seniority for her employment prior to 1972 gave present effect to the past unlawful practice. The Court held that Evans could not recover under that theory:

> Respondent is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But United was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then

allowed by [42 U.S.C. § 2000e-5(e)]. A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

Respondent emphasizes the fact that she has alleged a <u>continuing</u> violation. United's seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed on mere continuity; the critical question is whether any present <u>violation</u> exists.

<u>Id.</u> at 558.

The Postal Service also relies on a more recent Seventh Circuit decision that suggests that <u>Evans</u> applies to a progressive discipline system. In that case, the Seventh Circuit stated, citing <u>Evans</u>, that "[t]his rule [that Title VII does not allow for untimely recovery] applies even if an old, unchallenged discriminatory act has a present effect on an employee's status in a seniority system, a progressive discipline system, or some other dynamic employment scheme." <u>Barrett v. Ill. Dep't of Corr.</u>, 803 F.3d 893, 898 (7th Cir. 2015) (holding that the statute of limitations period for an FMLA claim begins at denial of FMLA leave request, not when plaintiff was fired years later as a consequence of her overall attendance record).

The Postal Service takes <u>Evans</u>, as applied to a progressive discipline system by <u>Barrett</u>, to mean that Captain Motrucinski

could properly take Anderson's prior discipline as lawful when he was deciding whether to remove Anderson. If so, the Postal Service argues, a finding of liability cannot be sustained if Captain Motrucinski's decision to remove Anderson was reasonable and nonretaliatory given her prior disciplinary incidents, even where her prior disciplinary incidents were retaliatory.

It is a difficult question whether Evans and Barrett apply to this case, as the factual circumstances of those cases are so distinguishable. Citing this case law, the Postal Service makes a strong argument that a Title VII plaintiff should be barred from attacking an old, unchallenged retaliatory sanction that underpins a termination in a progressive discipline system. Anderson responds that the Postal Service explicitly looked to the prior retaliatory discipline in determining that she could not be rehabilitated and must be terminated, and she emphasizes that she is not independently challenging the prior disciplinary sanctions as a basis for liability.

Even if the Postal Service's argument prevails, the Court's finding was not only that Captain Motrucinski relied on prior retaliatory discipline, but also that Captain Motrucinski's removal of Anderson was itself motivated by retaliation against her protected conduct. See Anderson, 2017 WL 1032502, at *13 ("[I]n light of the lax treatment of similarly situated white PPOs, removal was disproportionate and supports a claim of

8

retaliation particularly in light of the temporal proximity to Anderson's EEO complaints."); see also id. at *16 ("The Court concludes that Anderson would not have been removed but for her two prior retaliatory suspensions and that Captain Motrucinski had a retaliatory motive for her termination."). In other words, the evidence at trial showed that Captain Motrucinski's removal of Anderson was motivated by retaliation even if her three prior disciplinary actions were taken as given.

A brief recitation of the relevant facts is helpful. At the Brockton facility in June 2013, Anderson appeared to be sleeping in her patrol car despite instructions by her supervisors to stand outside and keep watch. While these are legitimate grounds for discipline, the reality in the Boston PPO workforce was that sleeping on the job was not taken particularly seriously. The undisputed evidence about two former PPOs Healey and Pasquale illustrates that point. Anderson's three prior disciplinary incidents, if taken at face value, can explain why Anderson would receive some level of discipline higher than sleeping PPOs with lesser disciplinary histories would. But the question remains whether Captain Motrucinski was justified in escalation to as harsh a punishment as removal, even given Anderson's three prior disciplinary incidents. There is no comparator evidence right on point since there does not appear to have been any other PPO caught sleeping on the job with a disciplinary history

comparable to Anderson's. What evidence exists casts a high degree of doubt on the appropriateness of removal, even given these circumstances: only five or six PPOs were terminated nationwide in the past three years and nobody had been removed from the Boston PPO service at any time within any witness's recollection.

As further evidence, the Court can also consider the past history of interactions between Captain Motrucinski and Anderson to find evidence of retaliatory motive. Even if the Court is precluded from considering the retaliatory nature of Anderson's prior disciplinary sanctions as an independent basis for knocking out the removal, the Court may certainly consider prior acts of retaliation resulting from Anderson's EEO filings as "relevant background evidence" to determining the decisionmaker's motive and intent and the context of the discipline. <u>Evans</u>, 431 U.S. at 558; <u>see also</u> <u>Shervin</u>, 804 F.3d at 48 (allowing evidence of time-barred discrimination or retaliation to be considered for "evaluating motive, intent, or context").

There is significant background evidence of retaliatory treatment of Anderson. Captain Motrucinski's predecessor, Captain Ford, wanted Anderson "gone" because of her EEO filings. Ford issued Anderson a seven-day suspension that the Court found was retaliatory. While Motrucinski himself played no part in

imposing this discipline, it can be inferred from the close-knit
nature of the PPO workforce that Motrucinski likely knew that
Ford wanted Anderson "gone." As the First Circuit has held,
"retaliatory animus could be established if a decisionmaker was
shown either to have been influenced by, or to have ratified,
another's animus." Shervin, 804 F.3d at 51.

More significantly, Captain Motrucinski was the actual
decisionmaker in another situation that the Court found
retaliatory. On September 11, 2012, Anderson named then-Sergeant
Motrucinski in an EEO pre-complaint counseling form. Just over
two weeks later, on September 26, 2012, then-Sergeant
Motrucinski issued Anderson a Letter of Warning in Lieu of a
Fourteen-Day Suspension for failure to follow instructions,
failure to secure accountable property, and an integrity
violation. The Court found in the bench trial order that the
September 26, 2012 discipline was unjustifiably severe
punishment for misconduct that was generally overlooked for
other PPOs and could not be explained by anything other than
retaliatory motive. Anderson, 2017 WL 1032502, at *15-16.

By itself, the fact that the Brockton incident was six
months after EEO activity (and Anderson's subsequent removal was
nine months removed) might not permit an inference of
retaliation. See Calero-Cerezo v. U.S. Dep't of Justice, 355
F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have

been held insufficient to establish a causal connection based on temporal proximity."). But the prior history of retaliatory discipline by Captain Motrucinski makes this a different case. In short, the most significant past disciplinary incident and the only part of Anderson's record that might have justified her subsequent removal, the fourteen-day suspension, followed so closely after EEO activity and was so severe that the Court found it could not be explained by anything other than retaliatory motive. Moreover, the inference of retaliation is strengthened by the undisputed evidence that in his time as a sergeant and then as a captain, Motrucinski never issued a Letter of Warning, suspension, or removal to any PPO other than Anderson. Anderson's previous supervisors also imposed discipline that could not have been anything but retaliatory. All that is strong background evidence of retaliation by Motrucinski that, when combined with evidence that removal was a disproportionate level of discipline for Anderson's misconduct at Brockton, supports an inference of <u>present</u> retaliatory motive by Motrucinski. The Court's finding of liability stands.

## III. <u>Comparator Evidence</u>

The Postal Service argues that the Court erred in relying on PPOs Healey and Pasquale as comparators. The Court's limited consideration of Healey and Pasquale was appropriate.

Healey and Pasquale were raised as potential comparators because they were PPOs who did not engage in Title VII protected activity, as Anderson had. To the extent that the Court's bench trial order may have suggested that Healey and Pasquale were appropriate comparators because they were "white," clarification is in order. For purposes of the retaliation claim (as opposed to the discrimination claim), Healey's and Pasquale's lack of involvement in EEO activity, not their race, was what made them potential comparators.

The Postal Service argues that Healey and Pasquale were not similarly situated to Anderson for a number of reasons: different work duties, different period of employment, and different supervisors. Those factors certainly all matter when determining whether purported comparators are similar enough for comparison purposes. See Anderson, 2017 WL 1032502, at *11 (explaining that for comparator evidence, identicality is not demanded, but reasonable similarity is required). The Court acknowledged these differences yet still found that past supervisors' treatment of Healey and Pasquale had some probative value. The Court noted that while the work duties were not identical, Healey's and Pasquale's guard shack duties were reasonably similar to Anderson's assignment of keeping watch in the aftermath of the Brockton fire. While Healey and Pasquale were caught sleeping earlier in time, their work years

13

overlapped with Anderson's. Above all, the Court determined that
it was the stark difference in treatment that was significant.
Some difference in treatment may have been justified given the
passage of time and the different supervisors, particularly
given evidence of a general increase in PPO responsibilities and
expectations over time. But the significantly harsher treatment
of Anderson compared to that of Healey and Pasquale could not be
fully explained by those differences, permitting an inference of
improper motive.

## IV. Emotional Distress Damages

The Postal Service argues that the Court erred in awarding
emotional distress damages in reliance on Anderson's damages
expert, Stuart Grassian. The Court stated in its bench trial
order that it was giving Dr. Grassian "less weight" because of
credibility concerns. Anderson, 2017 WL 1032502, at *18. The
Court did not abuse its discretion by allowing Dr. Grassian to
testify in the first place, and the Court correctly discounted
his testimony and did not adopt the diagnosis of post-traumatic
stress disorder that the Postal Service protests. In any event,
there was credible evidence of emotional distress in Anderson's
testimony that justified the emotional distress damages.

## V. Calculation of Damages

First, Anderson points out that there was a miscalculation
in the computation of emotional distress damages in the bench

14

trial order. The main text of the memorandum contained the correct figure, $248,164, but the order did not. Anderson, 2017 WL 1032502, at *19. The figure of $248,164 correctly reflects the Court's decision in the bench trial order to award back pay of $223,164 and compensatory damages of $25,000.

Second, Anderson argues that judgment should be altered to give another six months of back pay. The discrepancy derives from Anderson's own imprecise briefing. Anderson's supplemental proposed findings of fact and conclusions of law asked for three years of back pay in one part, then 3.3 years of back pay in another. Docket No. 120-2 at 41. The Court awarded three years of back pay. Anderson now argues that she is entitled to 3.5 years of back pay because of the extra time that had elapsed by the time the Court issued its judgment.

The Court has equitable discretion in awarding back pay, but the First Circuit has also stated that back pay is a "presumptive entitlement" of a plaintiff who succeeds in a Title VII case. Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 379 (1st Cir. 2004) (quoting Thurman v. Yellow Freight Systs., Inc., 90 F.3d 1160, 1171 (6th Cir. 1996)). The Court exercises its equitable discretion to award 3.3 years of back pay, which is the larger of the amounts that Anderson originally sought. Docket No. 120-2 at 41. That sum is 3.3 years at an annual rate of $101,987 (her total compensation in 2012), totaling $336,557.

Subtracting $82,797 in mitigation over that same time period leads to total back pay of $253,760. Adding emotional distress damages of $25,000 leads to a total of $278,760.

## IV.  Reinstatement to Window Clerk Position

The Postal Service argues that the Court abused its discretion by ordering the reinstatement of Anderson to her former position as window clerk.

The Postal Service argues that the Court's order would infringe upon the seniority rights of innocent third party employees and that the Court's order would force the Postal Service to violate its collective bargaining agreements. The Postal Service relies on a statement under oath by a Postal Service Labor Relations management official. Docket No. 129-1. That official states that the collective bargaining agreement for the American Postal Workers Union (which represents window clerks but not PPOs) does not allow an employee to retain seniority after more than one year absence from the window clerk position.

In response, Anderson submits an affidavit that at a previous redress conference, she previously received offers to settle this matter by resigning her position as a PPO and becoming a Postal Service window clerk with seniority intact. She also states that after her removal, the Northeast Area Representative for the PPO Union informed her that Postal

Inspection Service management was offering her a position as a Postal Service custodian, with seniority intact, in settlement of her claims.

The relevant provision of the collective bargaining agreement states that "[e]xcept as specifically provided elsewhere in this Agreement, a full-time employee begins a new period of seniority . . . [u]pon reinstatement or reemployment." Docket No. 129-5 at 7-8. Elsewhere, the agreement provides that "[a]n employee who left the bargaining unit . . . and returns to the same craft and installation . . . will begin a new period of seniority if the employee returns from a non-bargaining unit position within the Postal Service, unless the employee returns within 1 year from the date the employee left the unit." Docket No. 129-6 at 4.

There does not appear to be any provision in the collective bargaining agreement that provides for rehire or reinstatement of a window clerk with seniority intact. It is not certain how to reconcile this with Anderson's allegations that she received settlement offers of transfer with seniority preserved. All that is certain is that the Court cannot consider the Postal Service's settlement offers in determining the remedy.

Based on both parties' supplementation of the record on this point, the Court determines, in its equitable discretion, that front pay is a more appropriate remedy than reinstatement

17

to a window clerk position. However, there is a lack of evidence in the record about the appropriate amount of front pay.

The Court must exercise caution in determining the appropriate amount of front pay. "An award of front pay, constituting as it does, an estimate of what a plaintiff might have earned had s/he been reinstated at the conclusion of trial, is necessarily speculative." Cummings v. Standard Register Co., 265 F.3d 56, 66 (1st Cir. 2001) (quoting Kelley v. Airborne Freight Corp., 140 F.3d 335, 355 (1st Cir. 1998)). "[T]he greater the period of time upon which a front pay award is calculated in a case involving an at-will employee the less likely it is that the loss of future earnings can be demonstrated with any degree of certainty or can reasonably be attributed to the illegal conduct of the employer." Id. (quoting Conway v. Electro Switch Corp., 523 N.E.2d 255, 257 (Mass. 1988)).

Anderson was born in 1955, which makes her sixty-two years old this year. There is no evidence in the record about how many more years Anderson would have worked as a PPO or whether there is an ordinary or mandatory retirement age for PPOs. Within fourteen days, both parties shall supplement the record with evidence pertaining to the appropriate amount of front pay.

## VII. **Prejudgment Interest**

Anderson asks the Court to calculate prejudgment interest. The Postal Service concedes that 28 U.S.C. § 2674 generally does not bar an award of prejudgment interest against the Postal Service in Title VII cases. Loeffler v. Frank, 486 U.S. 549, 565 (1988).

"A trial court has discretion whether to award prejudgment interest on a successful Title VII claim." Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 961 (1st Cir. 1995); see also Hogan v. Bangor & Aroostook R.R. Co., 61 F.3d 1034, 1038 (1st Cir. 1995) ("Whether prejudgment interest is needed to make a plaintiff whole is within the discretion of the district court.").

Here, prejudgment interest on back pay is justified to make the plaintiff whole. However, prejudgment interest is generally not awarded on emotional distress damages. See Hudson v. Chertoff, 484 F. Supp. 2d 1275, 1278 (S.D. Fla. 2007); E.E.O.C. v. Everdry Mktg. & Mgmt., Inc., 556 F. Supp. 2d 213, 223–24 (W.D.N.Y. 2008), aff'd, 348 F. App'x 677 (2d Cir. 2009). Nor is prejudgment interest appropriate for front pay. Scarfo, 54 F.3d at 961.

Anderson seeks an annual rate of interest of 1.03%. The Postal Service does not contest the appropriateness of this number. The Court will enter an amended judgment following the supplementation of the record on front pay. At that time, the

Court will calculate prejudgment interest on the $253,760 back pay amount at 1.03% compounded annually, running from the filing of the complaint on August 15, 2014 to the issuance of the amended judgment.

The total remedy will be $253,760 in back pay, $25,000 in compensatory damages, prejudgment interest, and front pay to be determined.

## VIII.    Late Petition for Attorney's Fees

Anderson filed a petition for attorney's fees three days late, citing plaintiff counsel's personal reasons. The Postal Service argues that attorney's fees should be denied because the reason for late filing does not qualify as "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The Postal Service also argues that Anderson failed to meet the pre-filing conference requirement in Local Rule 7.1(a)(2).

The motion for leave to file is allowed. The filing was only three days late, there is no evidence of bad faith, and the Postal Service has demonstrated no prejudice. Anderson should file her petition for attorney's fees, with any necessary supplementation, within fourteen days. Any opposition shall be filed within fourteen days after that. The parties shall first confer to resolve or narrow the attorney's fee issues.

## ORDER

The Plaintiff's Motion to Alter Judgment (Docket No. 125) is **ALLOWED** in part and **DENIED** in part. The Plaintiff's Motion for Assessment of Pre-Judgment Interest (Docket No. 127) is **ALLOWED** in part and **DENIED** in part. The Plaintiff's Motion for Leave to File Untimely Motion for Attorney's Fees (Docket No. 126) is **ALLOWED**. The Defendant's Motion for Reconsideration (Docket No. 128) is **ALLOWED** in part and **DENIED** in part.

Both parties shall, within fourteen days, supplement the record on the appropriate amount of front pay. Anderson shall, within fourteen days, file a petition for attorney's fees. Any opposition to the petition for attorney's fees shall be filed within fourteen days after that.

/s/ PATTI B. SARIS_____
Patti B. Saris
Chief United States District Judge

21